**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**REBECCA NEAL,**
o/b/o **Z.I.N.,**

                        **Plaintiff,**                    **1:11-cv-1063
                                                            (GLS)**

                            **v.**

**Commissioner of Social
Security,**

                        **Defendant.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Latimer, Stroud Law Firm | NANCY E. STROUD, ESQ. |
| 951 Albany Shaker Road | |
| Albany, NY 12210 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SANDRA M. GROSSFELD |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

                                 **MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Rebecca Neal o/b/o Z.I.N., challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 1383(c)(3).[1] (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering the arguments, the Commissioner's decision is affirmed and Neal's Complaint is dismissed.

## II. Background

On October 6, 2009, Neal protectively filed an application for SSI under the Social Security Act ("Act"), alleging disability since November 29, 2001. (*See* Tr.[2] at 11, 87-90.) After her application was denied, Neal requested a hearing before an Administrative Law Judge (ALJ), which was held on December 7, 2010. (*See id.* at 24-47, 49-51, 53, 55-62.) On March 22, 2011, the ALJ issued a decision denying the benefits requested, which became the Commissioner's final decision upon the Social Security

---

[1] Although Neal's Complaint references 42 U.S.C. § 405(g), section 1383(c)(3) of Title 42 renders that provision applicable to judicial review of SSI claims.

[2] Page references preceded by "Tr." refer to the Administrative Transcript in this case. (*See* Dkt. No. 8.)

Administration Appeals Council's denial of review. (*See id.* at 1-3, 8-22.)

Neal commenced the present action by filing a Complaint on September 8, 2011, seeking review of the Commissioner's determination. (*See* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 7-8.) Both parties, seeking judgment on the pleadings, filed briefs. (*See* Dkt. Nos. 13, 21-22.)

### III. Contentions

Neal contends that the Commissioner's decision is not supported by substantial evidence and was arrived at through the application of incorrect legal standards. (*See* Dkt. No. 13 at 12-21.) Specifically, she claims that the ALJ: (1) improperly assessed, or entirely ignored, certain medical source opinions; (2) incorrectly weighed the opinions of Z.I.N.'s mother and fourth grade teacher; and (3) erred in finding that Z.I.N. suffered less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself. (*See id*; Dkt. No. 22 at 4-15.) The Commissioner counters that the appropriate legal standards were applied by the ALJ, and that his decision is supported by substantial evidence. (*See generally* Dkt. No. 21.)

3

## IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Dkt. No. 13 at 5-10; Dkt. No. 21 at 1.)

## V. Standard of Review and Analysis Framework

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of 18 are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI. Discussion

### A. "Medical Source" Opinions

Neal argues first that the ALJ improperly assessed certain medical source opinions of record. (*See* Dkt. No. 13 at 12-14.) Specifically, she contends that the ALJ disregarded findings made by certified school

4

psychologist Elizabeth Whitney, accorded unduly little weight to the opinion of examining state agency psychologist Seth Rigberg, and wholly ignored the findings of speech and language pathologist Dawn Grasso-Megyeri. (*See id.*)  The Commissioner counters that the ALJ "properly weighed the evidence and the opinions of record." (Dkt. No. 21 at 4-9.)  The court agrees with the Commissioner.

   *1.  Elizabeth Whitney, Certified School Psychologist*

Neal argues that the ALJ disregarded favorable portions of an October 2009 psychoeducational report completed by Dr. Whitney, a certified school psychologist.  (*See* Dkt. No. 13 at 12-13.)  The ALJ, however, thoroughly summarized Dr. Whitney's report and noted findings that weighed both in favor of, and against, the ultimate determination of non-disability.  (*See* Tr. at 16.)  Furthermore, in his functional equivalency analysis, the ALJ cited Dr. Whitney's clinical findings regarding Z.I.N.'s cognitive limitations, and explained why those findings were inconsistent with Z.I.N.'s educational achievement.  (*See id.* at 17.)  As such, the court finds no error in the ALJ's treatment of Dr. Whitney's findings and opinions.

   *2.  Seth Rigberg, NYS Licensed Psychologist*

Next, Neal contends that, by according them little weight, the ALJ

"improperly disregarded the expert opinions of Dr. Reigberg (sic)," an examining state agency psychologist. (Dkt. No. 13 at 13-14.) Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion, such as that offered by a psychologist: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c).

Following a January 2010 consultative psychiatric examination, Dr. Rigberg opined that the results of Z.I.N.'s evaluation were "consistent with psychiatric and cognitive problems[] that significantly interfere with his ability to function on a daily basis." (Tr. at 590.) The ALJ accorded little weight to Dr. Rigberg's opinion, citing as support the fact that Dr. Rigberg was not a "treating source," and that his opinion was "based upon a one-time examination" and was "inconsistent with the record as a whole." (*Id.* at 16.) As discussed more fully below, the ALJ proceeded in the subsequent functional equivalency analysis to articulate with greater specificity the record evidence supporting a finding of less severe

6

impairment than that posited by Dr. Rigberg. (*See id.* at 16-21.) Because the ALJ considered the relevant factors and properly explained his reasoning for discounting the weight given to Dr. Rigberg's opinion, his decision to do so was both legally sufficient and supported by substantial evidence.

### 3. *Dawn Grasso-Megyeri, M.S. CCC-SLP*

Neal argues next that the ALJ erred in giving no "weight or consideration" to the findings of examining licensed speech and language pathologist Dawn Grasso-Megyeri. (Dkt. No. 13 at 13.) "Qualified speech-language pathologists" constitute acceptable medical sources for the limited purpose of "establishing speech or language impairments," 20 C.F.R. § 416.913(a)(5), and, "unless a treating source's opinion is given controlling weight, the [ALJ] must" explain the weight assigned to their opinions, 20 C.F.R. § 416.927(e)(2)(ii). "Where application of the correct legal principles to the record could lead to only one conclusion," however, "there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Here, Grasso-Megyeri administered a speech and language assessment to Z.I.N. in January 2010, at the conclusion of which she

7

opined that his expressive and receptive language skills were "developing within normal limits." (Tr. at 585.) Grasso-Megyeri concluded that Z.I.N.'s results did "not appear to be significant, and as such, [were] not consistent with [Neal's] allegations." (*Id.*) Based on that conclusion, she recommended against "speech and language therapy services" for Z.I.N. (*Id.* at 586.) Neal is correct that, because Z.I.N. did not have a treating source, the ALJ should have explained the weight assigned to Grasso-Megyeri's findings. *See* 20 C.F.R. § 416.927(e)(2)(ii). Remand based on this shortcoming, however, would be futile, as the ALJ's determination of non-disability is supported by substantial evidence even absent any consideration of Grasso-Megyeri's findings, and it is clear that, if considered, her assessment could have only bolstered the ALJ's conclusion regardless of the weight which it received.[3]  *See Johnson*, 817 at 986.

## B.   "Other Source" Opinions

Neal contends next that the ALJ improperly disregarded her testimony and gave undue weight to the opinions of Robert Roscak, Z.I.N.'s fourth

---

[3] Although not raised by Neal, the same reasoning applies to the ALJ's omission of discussion of psychologist M. Marks' childhood disability evaluation form. (*See* Tr. at 593-98.)

8

grade teacher. (*See* Dkt. No. 13 at 14-17.) The Commissioner counters that the ALJ properly assessed and weighed the opinions of Neal and Roscak. (*See* Dkt. No. 21 at 5-7.) The court agrees with the Commissioner.

    1.   *Rebecca Neal*

Neal avers that she, rather than Z.I.N.'s teacher, is the most valuable non-medical source, and that the ALJ erred in failing to consider her opinion or assign to it specific weight. (*See* Dkt. No. 13 at 16-17.) Under the regulations, parents are considered "other sources," and, while their opinions cannot "establish the existence of a medically determinable impairment," they may be used as a means of providing insight into a child's degree of impairment and functional ability. SSR 06-03P, 2006 WL 2329939, at *2 (2006) (citing 20 C.F.R. § 416.913(d)). An ALJ should generally "explain the weight given to the opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *6.

Neal's contention that the ALJ failed to consider her opinions is unfounded. Although he did not assign specific weight to Neal's testimony,

9

the ALJ's evidentiary discussion and functional equivalency analysis are replete with references, both direct and indirect, to her allegations.  (*See* Tr. at 15-22.)  Furthermore, in addition to the specific functional equivalency analysis, the ALJ noted that, while "the testimony was generally credible, the record as a whole does not support findings that would support a determination that [Z.I.N.] is disabled." (*Id.* at 15.) Accordingly, despite the lack of specific weight assigned to Neal's testimony, the court is able to discern with ease the ALJ's reasoning, and his treatment of that testimony will not be disturbed.

    *2.    Robert Roscak*

Next, Neal argues that the ALJ erred in assigning greater weight to the assessment of Z.I.N.'s fourth grade teacher, Robert Roscak, than that accorded to the opinions of Drs. Rigberg and Whitney.  (*See* Dkt. No. 13 at 14-16.)  Under the regulations, teachers, like parents, are considered "other sources."  SSR 06-03P, at *2 (citing 20 C.F.R. § 416.913(d)). Opinions offered by teachers "should be evaluated by using the [20 C.F.R. § 416.927] factors," although "[n]ot every factor . . . will apply in every case."  *Id.* at *5.  The opinion of a "non-medical source," such as a teacher, may "properly be determined to outweigh the opinion from a medical

10

source," where, for example, the teacher "has seen the individual more often and has greater knowledge of the individual's functioning over time and if the [teacher's] opinion has better supporting evidence and is more consistent with the evidence as a whole."  *Id.* at *6.

Citing the length of Roscak's observance of Z.I.N. and his ability "to provide a unique perspective that cannot be obtained by the medical evidence and objective findings alone," the ALJ accorded "great weight" to the teacher's assessment.  (Tr. at 16.)  In the subsequent functional equivalency analysis, the ALJ discussed at length Roscak's findings in relation to the other record evidence, including medical source opinions.  (*See id.* at 16-22.)  Accordingly, because the ALJ considered the appropriate factors in assigning greater weight to Roscak's assessment than to the opinions of Drs. Rigberg and Whitney, and adequately explained the evidentiary support underpinning his decision, the court finds no error in that assignment.

**C.    Functional Domains**

Finally, Neal argues that the ALJ erred in failing to find that Z.I.N.

11

suffers marked limitations[4] in four of six functional domains. (*See* Dkt. No. 13 at 17-21.) The Commissioner contends, and the court agrees, that substantial evidence supports the ALJ's finding of less than marked limitations in each of the domains in question. (*See* Dkt. No. 21 at 9-12.)

### 1.   *Acquiring and Using Information*

This domain concerns how well the child acquires or learns information, and how well the child uses the information that he has learned. *See* 20 C.F.R. § 416.926a(g). School-age children "should be able to learn to read, write, and do math, and discuss history and science," as well as "use increasingly complex language (vocabulary and grammar) to share information and ideas." *Id.* § 416.926a(g)(2)(iv).

Although the ALJ acknowledged that Z.I.N. "has some significant problems in this area of functioning," including those noted by Roscak, he concluded that those problems do not rise to the level of a marked impairment. (Tr. at 17, 519.) As support for this conclusion, the ALJ noted that Z.I.N.'s "academic achievement is average to low average," as evidenced by his performance "at grade level in several areas," and that he

---

[4] A "marked" limitation is one that "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities" within the given domain. 20 C.F.R. § 416.926a(e)(2)(i).

12

has "no articulation delays in his expressive and receptive language functioning." (*Id.*) The ALJ properly noted Z.I.N.'s classification as learning disabled, (*see id.* at 432, 438), and acknowledged that he attends a resource room for thirty-five minutes per day, (*see id.* at 15-17, 432, 438).

The record evidence suggests that, despite evident problems at the outset of the relevant time period, (*see, e.g.*, *id.* at 268-69), Z.I.N. showed drastic improvement in this domain following the date of application. For example, while Z.I.N. received primarily failing marks during the first two quarters of third grade, his teacher, Tricia Nixon, stated in an April 14, 2010 letter to Neal that he had "done a complete 180 in his school work since February break," and that he was "definitely capable of working at a [third] grade level." (*Id.* at 345-46.) Z.I.N.'s 2009-2010 Individualized Education Program (IEP), which was completed on December 1, 2009, indicated that he required improvement in "subtraction skills with regrouping," and written tasks, but that he was reading and spelling at grade level and that he was able to comprehend what he read. (*Id.* at 440.) Showing greater progress still, Z.I.N.'s 2010-2011 IEP stated that he was "reading on grade level" and could "use comprehension strategies to retell a story, make inferences, and generate new questions." (*Id.* at 434.) The 2010-2011 IEP also noted

13

Z.I.N.'s continued strength in spelling, and, in math, his ability to "add and subtract with regrouping," as well as to "solve division problems . . . basic graphing, probability and symmetry problems." (*Id.*)

Accordingly, while the ALJ correctly noted that Z.I.N. has some deficiencies in this domain, his conclusion that those problems do not rise to the level of marked limitation is supported by substantial evidence.

*2.   Attending and Completing Tasks*

This domain contemplates a child's ability to focus and maintain attention, "begin, carry through, and finish . . . activities, including the pace at which [the child] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). School-age children should be able to focus "attention in a variety of situations in order to follow directions, remember and organize . . . school materials, and complete classroom and homework assignments." *Id.* § 416.926a(h)(2)(iv). Children of Z.I.N.'s age should also "be able to concentrate on details and not make careless mistakes," change "activities or routines without distract[ion,] . . . stay on task and in place when appropriate," and "complete a transition task . . . without extra reminders and accommodation." *Id.* § 416.926a(h)(2)(iv).

The ALJ found that, despite "a significant history" of focus and

14

attention issues, Z.I.N. suffers from less than marked limitation in this domain.  (Tr. at 18.)  Specifically, the ALJ determined that Z.I.N.'s symptoms are controlled effectively by medication.  (*See id.*); 20 C.F.R. § 416.924a(b)(9)(i).  On December 18, 2009, following a diagnosis of "probable ADD," Z.I.N. was placed by his treating nurse practitioner Mary Grace Jacon on 5 mg daily of Adderall XR.  (Tr. at 626.)  That dosage was doubled two months later.  (*See id.* at 627.)  While the record is replete with evidence of attention issues both at home and at school prior to the commencement of Z.I.N.'s medication regimen, (*see, e.g.*, *id.* at 38, 267, 439-42), his improvement in this area shortly thereafter is equally well documented.  In her April 2010 letter, Z.I.N.'s third grade teacher stated that he "completes all of his assignments on time and done well."  (*Id.* at 345.)  Similarly, his 2010-2011 IEP noted that, in contrast to the beginning of his fourth grade year, Z.I.N. was "diligent and conscientious about his work[,] . . . and now brings home work that he will need and bring[s] completed work to be handed in."  (*Id.* at 434.)  It stated further that Z.I.N. "completes all of his assignments on time and done well."  (*Id.* at 436.)  Finally, even Neal admitted that Z.I.N.'s medication "helps him focus more[,] . . . stay[] more on task on what he needs to do," and that, while on

15

the medication, Z.I.N. "needs less prompting." (*Id.* at 40.)

While the ALJ accurately noted Z.I.N.'s "significant history" of issues in this domain, his ultimate conclusion that Z.I.N. suffers less than marked limitation is supported by substantial evidence and will not be disturbed.

*3.     Interacting and Relating with Others*

In considering this domain, the Commissioner assesses a claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). School-age children "should be able to develop more lasting friendships with children" of their own age, "understand how to work in groups . . . [and] talk to people of all ages." *Id.* § 416.926a(i)(2)(iv).

The ALJ determined that, while Z.I.N. has "some limitation within this domain," it is less than marked. (Tr. at 19.) Neal testified that Z.I.N. has "frustration outbursts . . . [p]retty much every day," but noted that these fits occur only when he is "pushed or teased" by his brother. (*Id.* at 37.) She further stated that Z.I.N. is "very loving" and that he "loves his little sister." (*Id.*) As for school, Z.I.N. was suspended twice during the third grade;

16

once for "verbal abuse," and again for throwing a chair.  (*Id.* at 241-45.) Considerable evidence of record, however, portrays Z.I.N. as a well behaved child.  Following examination, Dr. Whitney referred to Z.I.N. as a "friendly youngster," and noted that "rapport was easily established."  (*Id.* at 264.)  Z.I.N.'s 2009-2010 IEP indicated that, despite his "rarely" occurring outbursts and quiet nature, Z.I.N. "is usually friendly and cooperative with adults," "enjoy[s] being in the large group setting," and "will interact with the other students."  (*Id.* at 441.)  His 2010-2011 IEP characterized Z.I.N. as "a sweet and friendly child" with "appropriate social development," and stated that "[h]e no longer has externalizing behaviors when given a task he deems somewhat difficult."  (*Id.* at 434-35.)  The 2010-2011 IEP further noted that, while "there were some behavior issues in the beginning of the year . . . there has been major turn around."  (*Id.* at 436.)  Roscak opined that Z.I.N. has "[a] slight problem" in three subsets of this domain, and "[n]o [p]roblem" in the remaining ten subsets.  (*Id.* at 521.)  Finally, Z.I.N. testified, and Neal confirmed, that he has friends whom he plays with at school.  (*Id.* at 29, 37-38.)

    Although the record indicates that Z.I.N. has experienced some behavioral issues, the ALJ's determination that he suffers less than marked

17

limitation in this domain is supported by substantial evidence.

### 4. *Caring for Yourself*

This domain contemplates a claimant's ability to "maintain a healthy emotional and physical state." 20 C.F.R. § 416.926a(k).  This includes how well the claimant gets his "physical and emotional wants and needs met in appropriate ways; how [he] cope[s] with stress and changes in [his] environment; and whether [he] take[s] care of [his] own health, possessions, and living area."  *Id.*  A school-age child "should be independent in most day-to-day activities . . . , although [he] may still need to be reminded sometimes to do these routinely."  *Id.* § 416.926a(k)(2)(iv). A child of Z.I.N.'s age should also "begin to demonstrate consistent control over [his] behavior, and [he] should be able to avoid behaviors that are unsafe or otherwise not good for [him]".  *Id.*

The ALJ found that Z.I.N. has less than marked limitation in this domain.  (*See* Tr. at 20-21.)  Z.I.N. testified that he showers and gets dressed by himself, but admitted that Neal must sometimes remind him to do so.  (*See* Tr. at 33-34.)  Dr. Whitney opined that Z.I.N. has difficulty "with changes in routine both at home and school."  (*Id.* at 268.)  Roscak, however, stated that Z.I.N. has "[n]o problem" in any subset of this domain.

(*Id.* at 523.)  Furthermore, as discussed above, Z.I.N.'s behavioral issues at school were largely ameliorated shortly after the filing date.  (*See, e.g.*, *id.* at 434-36, 441.)

Accordingly, while some evidence exists of problems within this domain, the ALJ's conclusion that Z.I.N. suffers less than marked limitation in caring for himself is supported by substantial evidence.

### D.     Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Neal's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**


November 21, 2012
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court